Mr. Carpenter, may it please the Court, Kenneth Carpenter appearing on behalf of Mr. Adam Shirk. The Congress provided certain conditions for special monthly compensation, for compensation over and above the scheduler rating. Mr. Carpenter, let me ask you this. Yes. 38 CFR 3.352A deals with aid and attendance, quote, to protect the claimant from hazards or dangers incident to his or her daily environment. Correct. What proof is in the record of incidental hazards or dangers in the facility where he's operating? The court order of involuntary commitment? Yes. So? Well, I don't think it is a so, Your Honor, because the involuntary commitment in this case would not have happened but for the psychiatric condition. No, no, no, no. You're not answering my question. What incidental hazards or dangers exist in the facility? What proof is there of that? Oh, inside the facility? Yes. No, there is none, Your Honor. But it is not required that those daily hazards be incident in the facility. It is that his service-connected disability provided, or excuse me, required the care in such an environment. That it has to be in a facility that is required by the service-connected disability. The service-connected disability is what requires the care and assistance on a regular basis to protect the claimant from the hazards or dangers incident to his or her daily environment. Yes, but there are multiple fact findings in this case that in this instance, Mr. Shirk was not involuntarily committed to protect him from danger. He was involuntarily committed to protect others from him causing them danger. That is correct, Your Honor. Under Oregon law, it expressly says that his involuntary commitment is to protect others. I don't see anything in 3352 that says regular aid and assistance is necessary to protect other people from him harming them. It says expressly to protect him from harm. And our assertion is that this care was not required to protect others, although that was the reason for the court order. It's the only reason specified in the record, and it's expressed fact finding below. Well, except that that fact finding is not consistent with the evidence of record. The evidence of record is. But I don't get to do that, right, Mr. Carpenter? The only way you have any legal issue here is that you need to convince me that 3352 extends not just to protecting him, but also extends to protecting others. Because otherwise, your case is entirely one of fact. And I can't review fact. I agree. So the only way you can prevail that I can see is if you convince me that 3352 extends to protecting other people from him harming them. And I don't see how that language in this regulation can be construed that way. Well, Your Honor, I don't believe that that description of protecting other people is, in fact, what is required by the regulation. What is required by the regulation is that the service-connected disability, in this case, a psychiatric disease, at page 17 and 16 of the joint appendix, at joint appendix 17, the commitment order specifically indicates that there was a finding of a mental disease and dangerousness. And thus, jurisdiction was appropriate. And then later, it says that the board also received evidence that Mr. Shirk was affected by a mental disease, as demonstrated by the underlying facts of this case. So it is that underlying disease, the service-connected disability. He may have a disease, but the facts in this case are he was involuntarily committed because he was a danger to others. There are no fact findings in this case that suggest he was a danger to himself. There are no fact findings. No, Your Honor. But you can't be asking me to make one. And I am not. You're asking me to find because he is paranoid schizophrenic, he therefore is necessarily a danger to himself? Is that what you're asking me to find? It sounds like that's what you're asking me to find. Well, to the extent that that is implicit in a finding of not guilty by reason of insanity that is presented in a criminal proceeding that is predicated entirely upon the service-connected disability. The relationship between special monthly compensation. You're saying a lot of words that don't respond to my point. You want me to find, as a factual matter, that his diagnosis automatically makes him a danger to himself. That's the only way you can win. Yes, Your Honor, I am. That the nature of paranoid schizophrenia is such that it presents an obvious. I'm not a psychiatrist. And there are no fact findings in the record to support what you've just said. No fact finder in this record said what you just said. And they did make fact findings expressly that his involuntary commitment was to protect others because he was an arsonist. So that's in the record. But what you'd like me to find, while it may sound sensible and seem very logical to me, and even have intuitive appeal to me, given his particular mental health diagnosis, I'm not a doctor and I'm an appellate court judge with no ability to review fact findings. And I'm not asking you to review the fact finding. I'm asking you to find that just as there is no evidence in the record that says that this involuntary commitment was for anything other than to protect other citizens from Mr. Karpenter. There is no fact finding that contradicts that it was the severity of his service-connected disability that caused him to be found not guilty by reason of insanity and involuntarily committed. And that the very nature of an involuntary commitment is the relationship between the service-connected psychiatric disability and his, for lack of a better term, involuntary incarceration. Mr. Karpenter, correct me if I'm wrong, but are you not seeking special monthly compensation to cover necessary aid and attendance for your client? That's what it's for, is it not? Well, I'm not quite sure what you mean as you phrased it, that you are using the words that exist in the regulation. But what I am suggesting is that- If somebody doesn't need aid and attendance, they can't get special monthly compensation. Is that not correct? That is correct, Your Honor. But in this case, it is clear that he needs aid and attendance for his service-connected disability. And he gets it for free? Yes. So what's it designed to cover? The fact that he needs the additional aid and attendance. There is no- No, no, no, no. There is no- What additional aid and attendance? He gets aid and attendance. Right, and the fact that he is- Let me ask you a question to see if I can help clarify this. Because I understand, and I think you do too, Judge Wallach's point, but I'm wondering if this veteran was diagnosed instead with PTSD and needed to be hospitalized in a VA mental psychiatric facility because he was threatening to kill himself as a result of night terrors that he was having due to PTSD. Despite the fact that he would be incarcerated, getting three square miles a day, have nurses and doctors watching him around the clock, he would be qualified for special- would he be qualified for compensation for regular aid and attendance, in your view, under those circumstances? Yes, because it is the nature of the service-connected disability. That's why I wanted to push it out for you. I understand that. Even though, Mr. Carpenter, there's no out-of-pocket expenses paid by him. That's correct. Let me ask you, I understood you'd be arguing that, or Mr. Shirt to be arguing, that his involuntary commitment to the Oregon State Hospital, as a matter of law, entitled him to SMC A&A benefits. That's correct. That's your position. That is my position. That is the only reasonable interpretation, and that the interpretation relied upon by both the board and by the Veterans Court, attempts to impose exclusions or exemptions from A&A. So you would say, you would say you don't, under your view, correct me if I'm wrong, please, you would say that you do not have to get into the circumstances of his condition. Just the fact that he was involuntarily committed, ipso facto, as a matter of law, entitles him to this benefit. That is correct, Your Honor, because of the nature of his service-connected disability. If he had a physical disability that required him to be in hospital care for his treatment, then that qualifies him for A&A. It qualifies him for the aid and attendance additional benefit. The additional benefit is only provided when there is a relationship between the service-connected disability and the need for aid and attendance. So supposing your client took that extra money and he hired an attendant. Think they could work for him in the facility? It's for aid and attendance, is it not? I'm not sure there's anything in either the statute or the regulation that suggests that the money received is to go to that purpose. The money that is- What's it called? It's for aid and attendance, is it not? If the service-connected disability requires aid and attendance, he is entitled to additional compensation. It's just like the dependent benefit, where the veteran gets the benefit, not the dependent, because it is the veteran's entitlement to that benefit. OK, Mr. Carpenter, you're in your rebuttal time. Do you want to use it, or? Yes, Your Honor. I'd like to use it. OK, sure. Ms. Moses, please proceed. Good morning, Your Honors, and may it please the Court. Your Honors are correct that this is an entirely factual matter that Mr. Shirk is challenging, and it gets the Court into the impermissible zone of reviewing challenges to factual determinations and a challenge to the application. Tell us about the law. I'm sorry, Your Honor? Rather than discussing the factual issues, which are as they are, I just find Mr. Carpenter's argument unsettling. It seems to me that aid and attendance, compensation for aid and attendance, implies that the veteran is using aid and attendance. Do you have any alleged history, or drafting history, or statements of purpose, or anything? I mean, it just makes no sense. I mean, Your Honor, I don't think that we even need to go beyond the regulations themselves. Certainly, 3.351. I know what it says. That's why my mind is so boggled. The plain language here controls exactly what the board is required to do, and exactly what the veteran is required to prove. And the board applied the criteria it set forth in 3.5352 as 3.351 requires. So you don't have anything else for me, though? No, Your Honor, nothing else is required. That wasn't my question. It's required if I ask you, and you can answer it. No, Your Honor, other than the regulations, language of the regulations themselves. Ms. Moses, as I understand it, and Mr. Carpenter confirmed this to me, I mean, I think the one point I would disagree with you on, I think there is a legal issue within our jurisdiction here. Because he says that the regulation, under the regulation, as a matter of law, once you go in involuntarily to a state mental hospital like this in Oregon, you're automatically ipso facto entitled to these benefits. So I mean, I think he does make a legal argument. Now, whether or not it has merit is another question. But it does seem to be a legal argument in that he's saying, under the regulation, once I go into the hospital, I'm entitled to the benefits. So why is that view of the regulation? I mean, that's what he says he's arguing. Now, why is that, in your view, is that view of the regulation wrong? That view of the regulation is incorrect. Because first, there is no presumption that's allowed for under 3.352A. The veteran must establish a factual need for aid and attendance. And 3.352A sets forth the criteria for that. And it does not mention confinement at all. There may be some circumstances under which a veteran who is involuntarily confined may be in need of aid and attendance. But what the board is required to do is to look at all of the facts of the case and determine whether the veteran actually has a need for that aid and attendance. So what you're saying is his legal argument is wrong because the statute doesn't carry the presumption that his argument suggests it does. So the legal argument goes away. And then once that goes away, you're in a fact issue over which we have no jurisdiction, right? Yes, Your Honor. So that's basically what you would say. Yes, Your Honor. And interestingly, at Mr. Shirk's reply brief at 8, he says that he's not asking or seeking or arguing that a presumption exists. Well, I would agree with that. He's asking for more than a presumption. I think he's right in that. He's saying, no, I'm not asking for a presumption. I'm asking for a free pass. Once I get involuntarily committed, the regulation says I'm entitled to these benefits. But I understand what your argument is. Yes, Your Honor. And I think that exposes the entire problem with this is because the position urged by Mr. Shirk would have the effect of the court abandoning its duty to look at the facts and apply the law to the facts of the case. And if the court doesn't have any further questions, we ask that you dismiss or, in the alternative, affirm the decision of the Veterans Court. Thank you. Mr. Carpenter, supposing your client has been sent to prison, there could be circumstances, as the government conceded, where he might need psychiatric care, for example, that wasn't available from an overcrowded prison facility, where I can imagine the reg would very clearly apply. But supposing, let me ask you this, would you be able to take this position that you're taking here for someone who's committed, who doesn't need any specific aid and attendance? After all, your position is he engaged in the arson because of something caused by his military service. I'm not sure what you mean by take the position that there wouldn't be any need for that. What I am suggesting is what you're sure of. Any need for aid and attendance. In other words, that you could just seek the money because he's confined because of his service connection. Yes, Your Honor, that is precisely what I'm saying. And the analogy would be. But have there been any claims where prisoners receive veterans' benefits? Have there been aid and attendance claims under that basis? No, because Congress has specifically spoken to the issue by statute and said that when a veteran is incarcerated, which was the alternative for Mr. Scherk here, then any benefits that they're receiving are automatically reduced to 10%. So a veteran, while incarcerated, could not. However. But they do get benefits. Only 10%. They're limited to the 10%. So the SMC would not come into play for a direct benefit to the veteran. But if there were a circumstance in which during incarceration the veteran were in need of hospital care in a facility that treated and dealt with his service-connected disability, if there were dependents, those dependents could get the apportionment of the full amount of his benefit, which would include aid and attendance. And I think it's important to understand that when Congress wrote this statute at 1114, it did not make a correlation between qualifying for the benefit and using the benefit, as you suggest quite logically, should go towards the aid and attendance that is being provided. At 1114-S, for instance, there is a provision for being housebound. And that's all it requires, is that you are housebound. And so there is no money to go towards that condition. But you do get paid additional compensation under the statutory and regulatory scheme. Unless there's any further questions from the panel. And we thank both counsel for their argument. The case is taken under submission.